**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SAMYSHA WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24 C 2128** |
| | ) | |
| **VILLAGE OF DOLTON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Samysha Williams sued her former and current employer, the Village of Dolton, for violating the Family and Medical Leave Act (FMLA) and for retaliatory discharge. Williams alleged that the Village violated the FMLA by terminating her while she was on FMLA leave. She also alleged that the Village terminated her in retaliation for her refusal to comply with unlawful orders. A jury returned a verdict in the Village's favor on the FMLA claim and in Williams's favor on the retaliatory discharge claim, awarding her $100,000 for emotional distress and $126,500 for lost wages and benefits.

The Village has moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). For the reasons below, the Court denies the Village's motion. Williams has also filed a bill of costs, and the Village has objected to certain specific costs. The Court reduces Williams's requested costs by $1,866 and taxes the Village $1,355.60.

**Background**

Williams began working for the Village in July 2019 as a Code Enforcement Officer.  In December 2020, she ascended to the position of Director of the Building, Permits, and License Department.  She was fired in August 2022.  In March 2024, Williams filed a complaint against the Village; Tiffany Henyard, who was the Mayor of Dolton during the events underlying the suit; and Keith Freeman, the Village Administrator at the relevant time.  Williams asserted five claims against all the defendants.

In her retaliatory discharge claim, Williams claimed that she refused to comply with unlawful orders from Mayor Henyard, who ordered employees not to process requests under the Illinois Freedom of Information Act (FOIA), to withhold permits from certain businesses, and to mute Village Trustees during virtual Village Board meetings. Williams claimed that, in April 2022, she was transferred to the Water Department and later fired based on her refusal to comply with these orders.

Williams also alleged a violation of the FMLA.  She says she experienced anxiety, depression, and difficulty sleeping because of her concerns at work.  Williams took an approved leave under the FMLA throughout June 2022 and from July 5, 2022 until her termination on August 3, 2022.  Williams alleges that her termination unlawfully interfered with her FMLA leave, which had been extended until August 10, 2022.

Williams also asserted claims for violations of procedural due process and conspiracy under 42 U.S.C. § 1983, as well as a claim for intentional infliction of emotional distress.  In July 2024, Henyard and Freeman moved to dismiss all of the claims against them for failure to state a claim.  In September 2024, the Court

dismissed all claims against those defendants.

In October 2025, two claims proceeded to trial:  the FMLA and retaliatory discharge claims against the Village.  After a three-day trial, the jury found for the Village on the FMLA claim and for Williams on the retaliatory discharge claim.  The jury awarded Williams $126,500 in lost wages and benefits and $100,000 for mental and emotional distress.

In November 2025, Williams filed a bill of costs, and the Village filed a motion to alter or amend judgment under Federal Rule of Procedure 59(e).

**Discussion**

**A.    Rule 59(e) motion**

The Village has moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e).  Federal Rule of Civil Procedure 59(a) governs a motion for a new trial; Rule 59(e) provides for a motion to alter or amend judgment.  "Courts may grant Rule 59(e) motions 'to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact.'"  *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (quoting *In re Prince,* 85 F.3d 314, 324 (7th Cir. 1996)).  "A 'manifest error' occurs when the district court commits a 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'"  *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)).

"Relief under Rule 59(e) is generally reserved for 'extraordinary cases[.]'"  *Reilly v. Will Cnty. Sheriff's Off.*, 142 F.4th 924, 929 (7th Cir. 2025) (quoting *Runnion ex rel.*

*Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 521 (7th Cir. 2015)).

And importantly, Rule 59(e) motions are "not appropriately used to advance arguments

or theories that could and should have been made before the district court rendered a

judgment, or to present evidence that was available earlier." *Miller*, 683 F.3d at 813

(quoting *LB Credit Corp. v. Resolution Trust Corp.,* 49 F.3d 1263, 1267 (7th Cir. 1995)).

### 1. Sufficiency of evidence and supplemental jury instructions

The Village argues that Williams failed to carry her burden on the third element of

her retaliatory discharge claim.  "To [sustain] a valid retaliatory discharge cause of

action, an employee must [establish] that (1) the employer discharged the employee, (2)

in retaliation for the employee's activities, and (3) that the discharge violates a clear

mandate of public policy." *Turner v. Mem'l Med. Ctr.*, 233 Ill. 2d 494, 500, 911 N.E.2d

369, 374 (2009).  Williams claimed that her discharge violated a clear mandate of public

policy because she refused to follow unlawful orders directing her not to process FOIA

requests, to deny permits and licenses to specific individuals, and to mute certain

Village Trustees during virtual meetings of the Village Board.

The Village contends that Williams failed to substantiate any of these three

contentions.  This is a challenge to the sufficiency of the evidence, even when

expressed in the Village's own terms:  "Plaintiff failed to present any evidence that

established she carried out, or refused to carry out[,] unlawful directives from Village

officials."  Def.'s Mot. at 1.  Challenges to the sufficiency of the evidence arise under

Federal Rule of Civil Procedure 50, which permits entry of judgment for the movant

where "a reasonable jury would not have a legally sufficient evidentiary basis to find for

the [non-moving] party on that issue."  Fed. R. Civ. P. 50(a).  Rule 50(a) describes a

4

motion for judgment as a matter of law made during the course of a trial, and Rule 50(b) describes a renewed post-trial motion for judgment as a matter of law, which requires an earlier Rule 50(a) motion.  Fed. R. Civ. P. 50.  But the Village's motion was filed under Rule 59(e), which applies where there is newly discovered evidence or manifest errors of law or fact.  The likely reason for the Village's resort to the ill-fitting Rule 59(e) is that it failed to make a Rule 50(a) motion at trial and thus forfeited any post-trial Rule 50(b) motion.

After reviewing the Village's motion, the Court ordered the Village to show cause "why point (i) of its purported Rule 59(e) motion should not be overruled on the ground that it has been waived or forfeited due to defendant's failure to make a Rule 50(a) motion arguing these grounds."  Dkt. 89.  The Court noted in the order that the Village could not move for relief under Rule 50(b) because it had not filed a Rule 50(a) motion for judgment as a matter of law at trial, which is a prerequisite for a Rule 50(b) motion. *See* Fed. R. Civ. P. 50(b); *Webster v. CDI Ind., LLC*, 917 F.3d 574, 578 (7th Cir. 2019).

In response to the show cause order, the Village asserted that a Rule 59(e) motion does not require a Rule 50(a) motion as a prerequisite.  That's true as far as it goes, but it doesn't get the Village anywhere.  Specifically, a Rule 59(e) motion cannot be used to bring a challenge to the sufficiency of the evidence and avoid the strictures of Rule 50.  *See Deleon v. Atia*, No. 98 C 5919, 1999 WL 1044209, at *2 (N.D. Ill. Nov. 9, 1999); *Olympia Exp., Inc. v. Linee Aeree Italiane S.P.A.*, No. 02 C 2858, 2007 WL 641557, at *14 (N.D. Ill. Feb. 27, 2007) (noting that the Advisory Committee Notes for Rule 59, 1946 Amendment, specifically stated that Rule 59(e) "deals only with alteration or amendment of the original judgment in a case and does not relate to a judgment

upon motion as provided in Rule 50(b)"), *rev'd on other grounds*, 509 F.3d 347 (7th Cir. 2007). The authority cited by the Village does not suggest otherwise and, unlike the Village's motion, does not involve challenges to the sufficiency of the evidence presented at trial. *See Avery v. City of Milwaukee*, 847 F.3d 433, 438 (7th Cir. 2017). In short, the Village did not make a Rule 50(a) motion at the end of trial but is now attempting to make what is actually a motion under Rule 50(b) under the guise of Rule 59(e). By failing to move under Rule 50(a), however, the Village forfeited its post-trial challenge to the sufficiency of the evidence. Additionally, with one exception noted below, the Village has not requested a new trial and has forfeited the opportunity to do so.

The Village also waived or forfeited an argument presented for the first time in its reply, in which it contended that Williams's theories were omitted from the pretrial order, which, it says, did not mention the "FOIA or whistleblower concepts" that became the basis of the third element of the retaliatory discharge claim. Def.'s Reply at 3. "Just as undeveloped arguments are waived, so are arguments raised for the first time in reply briefs." *United States v. Williams*, 85 F.4th 844, 849 (7th Cir. 2023). That aside, the Village did not so much hint at this argument at trial, such as by objecting to evidence or arguments based on a claim of nondisclosure, unfair surprise, or otherwise.

One aspect of the Village's Rule 59(e) motion is a proper challenge to a claimed error unrelated to the sufficiency of the evidence. Specifically, the Village challenges the Court's response to a note sent by the jury during deliberations. The Village asks the Court to grant its motion to alter or amend the judgment, "or alternatively, order a new trial to correct this manifest error and prevent injustice." Def.'s Mot. at 8.

6

During jury deliberations, the jury sent the Court a note in which it referred to the third element of the retaliatory discharge jury instruction and asked the Court, "[w]hat is meant as unlawful directives?" Dkt. 75 at 1. After conferring with the parties, the Court responded:

> An "unlawful directive" means a directive to perform an action that violates or is contrary to [a] federal, state, or local law, rule, or regulation. By way of example, the Freedom of Information Act is a state law. It is up to you to decide whether Ms. Williams was given a directive to perform an action that violated this or any other law, rule or regulation and whether she was discharged because she refused to carry out such a directive.

*Id.* at 2.

"We regard a court's response to a question from the jury regarding the law as a supplemental jury instruction[.]" *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 741 (7th Cir. 2016). In addressing a challenge to a response to a jury note, a court must ask "1) whether the instruction as a whole fairly and adequately treats the issues; 2) whether the instruction is a correct statement of the law; and 3) whether the district court answered the jury's question specifically." *United States v. Young*, 316 F.3d 649, 662 (7th Cir. 2002).

"When a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy." *United States v. Bitterman*, 320 F.3d 723, 728 (7th Cir. 2003) (quoting *Bollenbach v. United States*, 326 U.S. 607, 612–13 (1946)). That is precisely what the Court's response did here. The jury asked the Court to define an unlawful directive. The Court did so, provided an example, and reminded the jury of how the unlawful directive element fit within the retaliatory discharge claim. This satisfies the first element of the *Young* test: "the supplemental instruction fairly and adequately treated the issue presented by the jury as it fully considered only the question

7

propounded by the jury." *Young*, 316 F.3d at 662. The Court fully considered the meaning of an unlawful directive—the subject of the jury's note—and supplemented its instruction on that term alone. Second, the response specifically defined an unlawful directive as "a directive to perform an action that violates or is contrary to" a law. Dkt. 75 at 2. That satisfied the second element of the test by accurately stating Illinois law. *See Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 130, 421 N.E.2d 876, 879 (1981) ("[A]ctions for retaliatory discharge have been allowed where the employee was fired for refusing to violate a statute."). Finally, the Court answered the jury's question specifically by concretely defining an unlawful directive and providing an example of a state law.

The Village does not contend that the Court's use of the FOIA as an example of a state law was erroneous. Nor could it; there's no question that the Illinois FOIA is a state law. And the Court's response to the note did not say, or so much as hint, that the evidence showed the directive cited by Williams was contrary to the FOIA. Rather, the Court appropriately left that question for the jury, specifically stating that it was up to the jury to decide whether Williams was given a directive that was contrary to the FOIA or any other law. In short, the Court answered the jury's question fairly, adequately, accurately, and specifically.

Even if the supplemental instruction had failed this three-part test, "we reverse only if the response resulted in prejudice." *United States v. Funds in the Amount of One Hundred Thousand & One Hundred Twenty Dollars ($100,120.00)*, 901 F.3d 758, 769 (7th Cir. 2018). An initial or supplemental jury instruction "is not prejudicial unless, 'considering the instructions as a whole, along with all of the evidence and arguments,

8

the jury was misinformed about the applicable law.'" *Franco v. Richland Refrigerated Sols., LLC*, 128 F.4th 857, 865 (7th Cir. 2025) (quoting *Susan Wakeen Doll Co. v. Ashton–Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001)).  An instruction is prejudicial if "the jury was likely to be confused or misled." *Boyd v. Ill. State Police*, 384 F.3d 888, 894 (7th Cir. 2004).

The Village contends that the response's reference to FOIA was prejudicial because it "improperly directed the jury's attention to one of Plaintiff's unproven theories, implying that the Court endorsed the notion that a FOIA-related dispute could constitute an 'unlawful directive.'"  Def.'s Mot. at 6–7.  Not so.  First of all, it wasn't up to the Court (in the absence of a Rule 50 motion) to decide that Williams's FOIA-related theory was "unproven"; the instructions, and the Court's answer to the jury's question, appropriately left this for the jury to decide.  An instruction telling "the jurors they had to make up their own minds" does not result in prejudice.  *Funds in the Amount of One Hundred Thousand & One Hundred Twenty Dollars*, 901 F.3d at 769.  There is no viable contention that the Court's response, which gave an example of a state law and then reminded the jury of what it had to decide, prejudiced the jury's deliberations in any way.

Additionally, the Court's response did not reference workplace disputes or suggest that a "FOIA-related dispute" was enough to constitute an unlawful directive, as the Village contends.  The response defined an unlawful directive as a directive contrary to a "federal, state, or local law, rule, or regulation[,]" as required by Illinois law on retaliatory discharge.  Dkt. 75 at 2.  In short, nothing in the Court's instruction suggested that it was endorsing the notion that a workplace dispute alone was sufficient to satisfy the third element of Williams's claim.

9

Finally, although the Court need not address the Village's sufficiency of the evidence challenge because it is not properly raised, any such challenge would be unavailing. As explained above, Williams presented three theories to support the third element of her retaliatory discharge claim. A reasonable jury could have found that Williams was given an unlawful directive to stop processing FOIA requests. Williams testified that Mayor Henyard "told us not to process FOIA requests." Pl.'s Resp., Ex. 1 at 12:4. Williams did as directed until the mayor's chief of staff told her, "they're going to get us sued." *Id.* at 13:13–14.

The Village argues that former Mayor Henyard simply changed the Village's administrative system for responding to FOIA requests. Williams was not the Village's FOIA officer, and her role was gathering data from her department, which she would then pass on to the FOIA officer. The Village contends that the FOIA requests could have been processed without Williams's involvement. But Williams also testified that Henyard sought to fire the FOIA officer. *Id.*, Ex 2 at 15:11–14. And Brian Thigpen, another Village employee, corroborated that department heads were told that they were "[n]ot supposed to process them at all. They say you get a FOIA request, pass it on . . . do not process it." *Id.* at 87:24–25, 88:1. A reasonable jury could conclude that the directive not to process FOIA requests would lead the Village to violate the Illinois FOIA statute, which requires processing requests in five business days absent an extension. *See* 5 Ill. Comp. Stat. 140/3(d).[1]

---

[1] The Court need not address Williams's other two theories of unlawful directives, as the jury had a sufficient basis to find for Williams on the first theory.

### 2. Damages

Next, the Village asks the Court to remit the jury's award of $100,000 in damages for emotional distress and $126,500 in lost wages and benefits, or in the alternative, order a new trial on damages.  In reviewing a jury verdict, this Court must "accord substantial deference to the jury's assessment of compensatory damages."  *Ramsey v. Am. Air Filter Co.*, 772 F.2d 1303, 1313 (7th Cir. 1985).  "Two factors guide our analysis:  whether the jury's verdict is rationally related to the evidence and 'whether the award is roughly comparable to awards made in similar cases.'"  *EEOC v. Wal-Mart Stores E., L.P.*, 113 F.4th 777, 789 (7th Cir. 2024) (quoting *Green v. Howser*, 942 F.3d 772, 773 (7th Cir. 2019)).[2]  In all cases, and in particular in fact-specific employment cases, "[a]wards in other cases provide a reference point that assists the court in assessing reasonableness; they do not establish a range beyond which awards are necessarily excessive."  *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 485 (7th Cir. 2003).

### a. Emotional distress

The Village first argues that the jury's award of $100,000 in emotional distress damages is monstrously excessive, lacks a rational relationship to the evidence presented, and is disproportionate with similar cases.  Williams testified that her termination caused a variety of harms:  "I went further into depression.  I lost weight.  I couldn't eat."  Pl.'s Resp., Ex. 1 at 69:22–23.  Williams also testified that because she

---

[2] Citing *Merriweather v. Family Dollar Stores of Ind.*, 103 F.3d 576, 580 (7th Cir. 1996), the Village presents a third factor:  whether the award is "monstrously excessive[.]"  *Id.*  But the Seventh Circuit has more recently collapsed that question into the inquiry regarding whether an award is rationally related to the evidence.  *See Green*, 942 F.3d at 780–81 & n.2.

lost her health insurance, her son had to stop a medical treatment, she was no longer able to afford therapy, and she had to postpone a hysterectomy for about two years, during which time she "was bleeding literally every day for months" due to uterine fibroids. *Id.* at 69:23–25; 70:6–7; *Id.*, Ex. 2 at 69:16–21. Additionally, aside from the financial impact of lost wages, which the jury considered separately, Williams was "struggling, just trying to get by," "racked up over 30,000 in debt trying to pay my bills[,]" and lost an investment property. *Id.*, Ex. 1 at 70:12–13; *Id.*, Ex. 2 at 69:7. As a result of her debt, as of the trial, Williams has not been able to resume her son's medical treatment. *Id.*, Ex. 2 at 69:25, 70:1–2.

The Village takes issue with the jury's $100,000 emotional distress award for what it calls "[t]hese fleeting descriptions of ordinary disappointment and stress" that lacked corroboration from "family members, friends or coworkers[.]" Def.'s Mot. at 12. Calling Williams's testimony about the ills that befell her due to the loss of her job and her medical insurance a mere "fleeting description[ ] of ordinary disappointment and stress" is, to put it kindly, a stretch. But that aside, the Village's characterization disregards the requirement, on a motion for new trial, to view the evidence in the light most favorable to the party that prevailed. *See Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004). And "[a]n award for nonpecuniary loss can be supported, in certain circumstances, solely by a plaintiff's testimony about his or her emotional distress." *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1022 (7th Cir. 2016) (quoting *Tullis v. Townley Eng'g & Mfg. Co.,* 243 F.3d 1058, 1068 (7th Cir. 2001)). The jury had a rational basis for its award, even if it rested solely on Williams's testimony. *See id.* ("[B]revity and self-control in a judicial proceeding need not be interpreted as a weak

12

case[.]" (quoting *Deloughery v. City of Chicago*, 422 F.3d 611, 620 (7th Cir. 2005)).
Williams did not merely testify that she was deeply emotionally affected by the loss of
her job, as in one of the cases the Village cites.  *See Avitia v. Metro. Club of Chi., Inc.*,
49 F.3d 1219, 1229 (7th Cir. 1995).  She also pointed to concrete, tangible impacts of
her termination on her health, her and her son's medical care, and her finances.  A jury
could find that these harms exacerbated her emotional distress.  And the fact that
Williams did not seek psychiatric treatment reasonably could be viewed as arising from
her inability to do so due to her loss of medical insurance and the financial stress
resulting from the Village's termination of her employment.

The jury's award was comparable to awards in similar cases.  *See, e.g.*,
*Deloughery*, 422 F.3d at 619–20 (upholding this Court's remittitur of compensatory
damages from $250,000 to $175,000 where the plaintiff never sought professional help
for her emotional distress and testified to a profound impact on her sense of self when
she was denied a promotion); *Tullis*, 243 F.3d at 1068 (upholding an $80,185 award for
a plaintiff who did not seek psychological help, was unemployed for most of a year, and
was unable to pay child support or utility bills after his termination); *Lampley*, 340 F.3d
at 484 (upholding a $75,000 compensatory damages award for a plaintiff who found a
new job two months after his termination but experienced negative emotional affects,
some of which continued over a year after the termination).  Each of the just-cited cases
is over twenty years old.  If adjusted for inflation, these awards, in current dollars, would
be tens of thousands of dollars higher.  The jury's award here is at least roughly
comparable to awards made in these cases.

The Village argues that "emotional distress awards in employment and retaliatory

discharge cases generally range between $25,000 and $50,000 absent corroborating medical or lay testimony of ongoing mental harm." Def.'s Mot. at 13. That generalization is not particularly helpful given the fact-specific nature of employment and retaliatory discharge cases, where damages depend on a plaintiff's professional ambition and position, financial responsibilities, and family circumstances, in addition to mental harm.

### b. Lost wages and benefits

The Village next argues that the jury's award of $126,500 in lost wages and benefits must be reduced.[3] Specifically, the Village contends that the jury failed to deduct income that Williams earned in several jobs that she held after her termination.

Williams's annual salary at the Village prior to her termination was $45,000. Pl.'s Resp, Ex. 1 at 73:11-13. She was terminated by the Village in August 2022 and rehired by Mayor House in May 2025. *Id.*, Ex. 2 at 174:11–12. That period of two years and nine months translates to $123,750 in lost income, assuming that Williams's annual salary would have remained $45,000. Williams also testified that her termination resulted in the loss of her medical insurance for herself and her children—which caused her to delay, for two years, surgery for a medical condition as well as medical treatment for her son. *Id.* at 69:14-70:3. And there was testimony from which a jury reasonably could infer that Williams's losses included pension benefits.[4] That said, there was no

---

[3] Williams's reply to the Village's motion incorrectly states that she was awarded $120,000 in lost wages and benefits. The jury awarded her $126,500. *See* dkt. 77.

[4] On questioning by defense counsel, Williams testified that when she later returned to employment with the Village, she was paid "full benefits," including a pension. *See* Pl.'s Resp., Ex. 2 at 65:11-14.

evidence that placed a specific value on the lost benefits and pension.

The jury awarded Williams $126,500. That award is slightly above the Court's calculation of the sum of Williams's lost wages alone, $123,750, but it is close enough to that figure to be rationally related to the evidence. Actually it's an undercount of Williams's total economic losses, if one considers that she lost not only wages, but also health and pension benefits. "[D]amages need not be proven with mathematical certainty," although "they must reasonably approximate the actual damages suffered." *Combined Network, Inc. v. Equitable Life Assur. Soc.*, 805 F.2d 1292, 1299 (7th Cir. 1986). The jury's award meets that standard; it was a reasonable approximation of Williams's lost wages and benefits. The Court does not know how the jury arrived at its final number, but that is not required, and the Village did not request an instruction requiring the jury to break down any award for lost wages and benefits. The jury was instructed not to award damages based on "speculation or guesswork," dkt. 87 at 14, and here the award is sufficiently tied to the evidence to preclude a finding that the jury ran afoul of that admonition.

The Village's primary objection to the jury's award is that it failed to subtract the income that Williams earned in other positions before she returned to working for the Village. The Village offered evidence regarding three different positions that Williams held in this period. The Village estimated as follows: Williams worked at a law office three days per week at $18 per hour from about March to October 2023, earning about $15,120. She then worked a different job for forty hours per week at $28 per hour from October 2023 through February 2024, earning about $19,040. Finally, she worked at the law office full-time at $18 per hour from April 2024 until May 2025, earning about

$41,760.  In total, Williams earned approximately $75,920 in wages from these other positions.  *See* Def.'s Mot. at 15.

The Village contends that the jury's award for lost wages and benefits is excessive because it does not account for Williams's other earnings.  It relies on case law to the effect that an award of lost wages for retaliatory discharge should "make the employee whole[,]" that is, "compensate him to the extent that the wrongful deprivation of salary has resulted in financial loss."  *People ex rel. Bourne v. Johnson*, 32 Ill. 2d 324, 329, 205 N.E.2d 470, 473 (1965).  "For that reason the amount recoverable is to be reduced by his other earnings during the period of separation[.]"  *Id.*

But under Illinois law, "[t]he burden falls on the employer, not the discharged employee, to prove the amount of mitigation earnings in order to reduce the damage award."  *Calabrese v. Chi. Park Dist.*, 294 Ill. App. 3d 1055, 1068, 691 N.E.2d 850, 859 (1998).  And here the jury was not told to reduce any award for lost pay on the retaliatory discharge claim by Williams's other earnings.  No instruction covered this point; the Village made no objection to the absence of such an instruction; and it does not argue now that the absence of an instruction along these lines was plain error.  Given these circumstances, the Village cannot legitimately complain after trial that the jury did not make a reduction that the instructions did not tell it to make.[5]

_____

[5] In fact, the only reference in the instructions to reduction of any damages award was found in the FMLA damages instructions, a claim on which the jury had not found for the Village. That instruction—as requested by the Village—called for a reduction of damages "by any wages and benefits that Ms. Williams received from other employment during that time that she would not otherwise have earned."  Dkt. 87 at 13.  It is also instructed the jury that if the Village proved (among other things) that Williams had not made a reasonable effort to reduce her damages, her award should be reduced by "the amount she reasonably would have earned during the period for which you are awarding lost wages and benefits."  *Id.*  No parallel admonition was included in the damages

16

That aside, the Village has not made the case that the jury's award was unreasonably excessive even if one considers the instructions' bare reference to "lost wages and benefits," Dkt. 97 at 14, as sufficient to tell the jury that it had to deduct Williams's other earnings. As indicated earlier, in addition to the evidence of lost wages, Williams offered testimony regarding lost benefits—principally health insurance—and a pension. The Court cannot say, on the record before it, that the jury's award was an unreasonable estimate of the net financial losses Williams suffered from the termination of her employment.

For these reasons, the Village is not entitled to a new trial or a remittitur on damages.

## B.    Bill of costs

"Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Lange v. City of Oconto*, 28 F.4th 825, 845 (7th Cir. 2022) (quoting *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 893 (7th Cir. 2019)). The prevailing party "is a party that has prevailed on a substantial part of the litigation even if the party did not succeed on every claim." *Culp v. Caudill*, 140 F.4th 938, 944 (7th Cir. 2025) (holding that district court did not abuse its discretion by awarding costs to a plaintiff who lost on most claims at summary judgment but prevailed on one claim at

---

instruction for the retaliatory discharge claim. And, again, the Village never requested such an instruction on that claim and interposed no objection that the damages instruction was deficient in this regard.

trial and was awarded nominal damages), *cert. denied*, No. 25-314, 2025 WL 3506994 (U.S. Dec. 8, 2025).

"[W]e ask two questions when reviewing an award of costs: '(1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable.'" *Lane v. Person*, 40 F.4th 813, 815 (7th Cir. 2022) (quoting *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000)). To be recoverable, an expense must fall into one of the categories of costs specified by 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441–42 (1987).

Williams seeks to recover costs in the amount of $3,221.60. The Village concedes that Williams is a prevailing party but asks the Court to reduce the bill of costs by $2,219.40. The Court will address only the disputed points: the fee for Dr. Crystal Hines-Mays, service of process costs, and certain costs relating to trial exhibits.

Williams seeks $1,866 in witness fees for Dr. Crystal Hines-Mays. Witness fees are compensable under 28 U.S.C. § 1920, but "28 U.S.C. § 1821[(b)], more specifically addresses the allowable amount" and limits the fee to $40 per day. *Lane*, 40 F.4th at 815. Williams concedes that section 1920 limits the fees compensable for a witness (whether a treating physician or an expert) and "does not oppose the Court limiting the taxable amount for Dr. Hines-Mays to $40, plus any allowable mileage if the Court deems it appropriate." Pl.'s Reply, Bill of Costs at 2.[6]

---

[6] Dr. Hines-May testified remotely. The Court does not know what "allowable mileage" would mean for a witness who testified remotely, nor has Williams provided any documentation of mileage expenses.

18

The Village contends that Williams is not entitled to any witness fee for Dr. Hines-Mays because her testimony supported Williams's unsuccessful FMLA claim. Williams responds that "Dr. Hines-Mays authenticated FMLA certifications, explained the medical basis for Plaintiff's leave, and provided context for Plaintiff's mental-health condition and treatment—evidence that the Court admitted and that Defendants vigorously cross-examined and used in argument." Reply at 3. The first two listed aspects of the doctor's testimony support Williams's FMLA claim. The last issue—Williams's mental health condition—might relate to Williams's compensatory damages for her retaliatory discharge claim. But Dr. Hines-Mays testified that she could only be certain that she treated Williams before her termination. *See* Pl.'s Resp. to Rule 59(e) Mot., Ex. 2 at 146–47. Although Dr. Hines-Mays may have treated Williams once after her termination, she did not testify at all about Williams's mental state after her discharge. Much like a prevailing party in a case brought under 42 U.S.C. § 1983 may not recover attorney's fees incurred on unrelated claims on which the party lost, Williams is not entitled to either $1,866 or $40 for a witness whose testimony was irrelevant to the claim on which she prevailed. *See Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998).

Second, the Village objects to Williams's request for $166.67, a fee for "service of summons and subpoena." Pl.'s Bill of Costs. The Village observes that the related documentation for "Service of process on Dolton cases" states a total amount of $500, and it is not clear how Williams calculated a $166.67 cost for service in Williams's case.

Fees of the clerk and marshal are taxable pursuant to 28 U.S.C. § 1920(1). This includes private process service fees, limited to the rate that would be charged by the

19

United States Marshals Service. *See Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996); *see also* 28 C.F.R. § 0.114(a)(3) (rate for process served or executed personally is $65 per hour for each item served plus travel costs and other expenses). Williams benefits from a presumption that she is entitled to costs as the prevailing party. *See Lange*, 28 F.4th at 845. At the time process was served, the case included two individual defendants and the Village, which waived service. *See* dkt. 6 at 2. The Village has not carried its burden to show that a service cost of $166.67 for two defendants was inappropriate. *See id.*

Finally, the Village objects to the cost of "[f]ees and disbursements for printing" of $186.73, which Williams spent on demonstrative poster boards documenting the timeline of her employment and the organizational structure of the Village. Pl.'s Bill of Costs. Under 28 U.S.C. § 1920(4), the Court may tax "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." *Id.* § 1920(4). Exemplification includes "a wide variety of exhibits and demonstrative aids" including charts, timelines, and other visual displays. *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000). Williams's illustrative posterboards are a recoverable cost, and the requested amount is reasonable.

In sum, the Court reduces Williams's requested costs of $3,221.60 by $1,866, the cost of Dr. Hines-Mays's testimony, and taxes costs in favor of Williams and against the Village in the amount of $1,355.60.

## Conclusion

For the foregoing reasons, the Court denies the Village's Rule 59(e) motion [dkt. 83] and approves in part Williams's bill of costs [dkt. 80]. The Village is taxed costs of

$1,355.60.  The remainder of the bill of costs is overruled.

                                                        MATTHEW F. KENNELLY
                                                        United States District Judge

Date:  March 5, 2026